UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARS EQUALITY CENTER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTONY J. BLINKEN, et al.,<br><br>Defendants. | Case No. 24-cv-00001-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

Now before the Court is defendants' motion to dismiss the complaint. Dkt. No. 10. The Court held a hearing on the motion on May 10, 2024. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion and SEVERS the claims of two plaintiff families.

## BACKGROUND[1]

Originally, the plaintiff group in this case was comprised of one organizational plaintiff—Pars Equality Center ("Pars")—and thirteen Iranian American families as follows: thirteen individuals who are United States Citizens or Lawful Permanent Residents ("petitioner plaintiffs") as well as twenty-four of their respective Iranian spouses, children, parents, and/or siblings ("beneficiary plaintiffs") on whose behalf the petitioner plaintiffs have filed immigrant visa petitions. Since the filing of the complaint, numerous plaintiffs have voluntarily dismissed their claims, leaving three petitioner plaintiffs and three beneficiary plaintiffs in the case, along with the

---

[1] For purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in the complaint and draws all reasonable inferences in plaintiffs' favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

organizational plaintiff. *See* Dkt. Nos. 18, 20, 23, 31, 32.

This case challenges what plaintiffs term the "DS-5535 Scheme." The Form DS-5535 is a supplemental questionnaire for visa applicants, requesting such information as the applicant's former addresses, travel, social media handles, and 15 years of employment history. Dkt. No. 1 ("Compl.") ¶ 142. The State Department first introduced the DS-5535 on May 4, 2017. *Id.* ¶ 112. At that time, the methodology explained that consular officers at visa-adjudicating posts would ask the additional DS-5535 questions "***when the consular officer determines*** that the circumstances of a visa applicant, a review of a visa application, or responses in a visa interview indicate a need for greater scrutiny. The additional questions may be sent electronically to the applicant or be presented orally or in writing ***at the time of the interview***." *Id.* (emphases in complaint); Compl., Ex. A, 82 Fed. Reg. 20956 (May 4, 2017). Plaintiffs allege that "[t]he essence of Defendants' DS-5535 Scheme is a decision by Defendants to prohibit Iranian immigrant visa applicants from submitting the DS-5535 prior to their immigrant visa interviews[,]" thereby causing unreasonable delay in the adjudication of their applications. Compl. ¶ 164.

Issuance of immigrant visas is governed by the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537. Visas are separated into three broad categories: family-based, employment-based, and diversity. 8 U.S.C. § 1151(a). Plaintiffs here seek family-based immigrant visas. Each of the petitioner plaintiffs has filed a Form I-130, *Petition for Alien Relative*, on behalf of their beneficiary relative(s) and those Form I-130s have all been approved. Compl. ¶¶ 25, 37-67. Upon approval of the I-130, if the beneficiary of the petition is residing outside of the United States (as all of the beneficiary plaintiffs in this case are), the petition is then sent to the National Visa Center ("NVC") for pre-processing and the beneficiary begins the process of formally applying for an immigrant visa by submitting Form DS-260, *Online Immigrant Visa and Alien Registration Applications*. *Id.* ¶¶ 5, 78. All beneficiary plaintiffs here submitted their Form DS-260 and those DS-260 applications were found by NVC to be "Documentarily Qualified" or "Documentarily Complete." *Id.* ¶ 5.

At that point, the application is sent to the Embassy having jurisdiction over the applicant's place of residence for interview. *Id.* ¶ 81. Iranian visa applicants are considered "homeless,"

2

1 meaning they are nationals of a country in which the United States has no consular representation
2 or where the limited consular staff is not authorized to process immigrant visa applications. *Id.* ¶ 84.
3 For "homeless" applicants, the Visa Office has designated specific posts to process the applications.
4 *Id.* ¶ 83. Iranian visa applicants are typically assigned processing posts in Abu Dhabi, Ankara, and
5 Yerevan. *Id.* ¶ 84.

6 Under 22 C.F.R. § 42.81(a), "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." According to the complaint, "A consular officer cannot temporarily refuse, suspend, or hold the visa for future action." Compl. ¶ 107. The Department of State's Foreign Affairs Manual ("FAM") states that there are no exceptions to the rule that once a visa application has been properly completed and executed before a consular officer, a visa must either be issued or refused. *Id.* ¶ 100 (citing 9 FAM 504.11-2(A)). The regulations also provide that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e).

18 Here, beneficiary plaintiffs attended their visa application interviews at the U.S. Embassy in Ankara, Yerevan, and Abu Dhabi. Compl. ¶¶ 38-67. The visa interviews took place between October 18, 2022, and May 18, 2023.[2] *Id.* The complaint alleges, "Following their interviews, Beneficiary Plaintiffs were informed that their applications would have to undergo mandatory administrative processing. Following their interviews, consular officers gave non-final 221(g) refusal notices to Beneficiary Plaintiffs." *Id.* ¶¶ 140-141. The consular officers also requested that beneficiary plaintiffs complete and submit the DS-5535, which they all promptly did. *Id.* ¶¶ 142-143. As of the filing of the complaint, beneficiary plaintiffs had thus been waiting between 229 and

---

[2] It appears from the exhibit attached to the Peterson Declaration, Dkt. No. 11-1, that the complaint's reference to plaintiff Abbas Jafar Ali Jassebi's March 27, 2022 interview date (Compl. ¶ 45) was an error, and that the interview took place on March 27, **2023**.

645 days for final adjudication of their visa applications. *Id.* ¶¶ 16, 199; *see* Errata, Dkt. No. 5.

On January 1, 2024, plaintiffs filed in this Court a complaint for declaratory and injunctive relief and petition for writ of mandamus. Dkt. No. 1. The complaint asserts five counts: four for violation of the Administrative Procedure Act ("APA") and one requesting the Court compel agency action pursuant to the Mandamus Act.

Plaintiffs seek: a declaration that defendants' DS-5535 Scheme is unlawful; a declaration that the delay in adjudicating beneficiary plaintiffs' applications for immigrant visas is unreasonable and violates the INA and that plaintiffs are entitled to a prompt adjudication of the immigrant visa applications; a writ of mandamus and order compelling defendants to complete all steps necessary to adjudicate beneficiary plaintiffs' immigrant visa applications, within thirty days of the date of the court order; and reasonable attorneys' fees and costs. *Id.* at 46-47.

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). They raise jurisdictional challenges and argue that the complaint fails to state a claim. Defendants argue that Pars Equality Center lacks organizational standing. Finally, defendants seek to dismiss certain plaintiffs from the case and/or have the cases transferred to another venue based on res judicata, forum shopping, and/or misjoinder.

After the briefing was complete, each side filed several notices of supplemental authority and plaintiff filed two responses to defendants' notices. *See* Dkt. Nos. 14, 19, 25, 26, 27, 28, 29, 30. Following the hearing the Court also ordered plaintiffs to file a status update regarding the plaintiffs remaining in the case. Dkt. No. 21. Plaintiffs submitted the update on May 24, 2024. Dkt. No. 24. The Court has reviewed all of these filings and the matter is ripe for review.

**DISCUSSION**

**I.    DS-5535 Scheme Challenge (Count One)**

All the plaintiffs in this case are tied together by their challenge to the DS-5535 scheme. The Court therefore addresses this claim first. Defendants move to dismiss Count One for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

4

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher*, 828 F.2d at 561. However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

### B. Analysis

In Count One, plaintiffs allege that "the action of preventing Iranian immigrant visa applicants from furnishing DS-5535 responses prior to their interviews[] is arbitrary and capricious[,]" in violation of the APA, 5 U.S.C. § 706(2)(A), (D). As defendants observe, and plaintiffs agree, "Plaintiffs do not challenge the collection of this information, only the timing of the

5

collection." Mot. at 10. Defendants move to dismiss Count One, arguing that Congress has given the Secretary of State broad discretion over the visa application process, "thereby leaving the Court with no meaningful standard by which to review the policy." *Id.* at 11.

The APA provides no cause of action where the relevant statute precludes judicial review or agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). As the Supreme Court has explained,

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. . . . [I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion" [under the APA].

*Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

In their complaint, plaintiffs allege that the DS-5535 scheme violates the text of 8 U.S.C. § 1202(b), which specifies what documentary evidence shall be furnished for an immigrant visa.[3] Compl. ¶ 2. Plaintiffs emphasize that subsection (b) dictates that an applicant for an immigrant visa

---

[3] This subsection reads, in full:

> Every alien applying for an immigrant visa shall present a valid unexpired passport or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Secretary of State. The immigrant shall furnish to the consular officer with his application a copy of a certification by the appropriate police authorities stating what their records show concerning the immigrant; a certified copy of any existing prison record, military record, and record of his birth; and a certified copy of all other records or documents concerning him or his case which may be required by the consular officer. The copy of each document so furnished shall be permanently attached to the application and become a part thereof. In the event that the immigrant establishes to the satisfaction of the consular officer that any document or record required by this subsection is unobtainable, the consular officer may permit the immigrant to submit in lieu of such document or record other satisfactory evidence of the fact to which such document or record would, if obtainable, pertain. All immigrant visa applications shall be reviewed and adjudicated by a consular officer.

8 U.S.C. § 1202(b).

6

"shall furnish to the consular officer *with his application*" various documents, including "a certified copy of all other records *or documents concerning him or his case which may be required by the consular officer*." *Id.* (quoting 8 U.S.C. § 1202(b)) (emphases added by plaintiffs). Plaintiffs appear to read subsection (b) as preventing a consular officer from requesting further documentation, such as a DS-5535, after the applicant's interview instead of "*with his application*." However, nothing in the plain text of subsection (b) indicates that a consular officer may not request supplemental information after the application has been furnished.

Moreover, the preceding subsection supports defendants' position that the agency has broad discretion in setting the "form and manner" for the immigrant visa application, as other courts have found. *See* Mot. at 11-14. 8 U.S.C. § 1202(a) states:

> Every alien applying for an immigrant visa and for alien registration shall make application therefor in such form and manner and at such place as shall be by regulations prescribed. In the application the alien shall state his full and true name, and any other name which he has used or by which he has been known; age and sex; the date and place of his birth; and such additional information necessary to the identification of the applicant and the enforcement of the immigration and nationality laws as may be by regulations prescribed.

8 U.S.C. § 1202(a).

As Judge Gilliam of this district has observed:

> Although few cases have analyzed what legal duties are imposed by § 1202(a), those that have considered the statute have concluded that it vests the State Department with wide discretion. In *Legal Assistance for Vietnamese Asylum Seekers v. Department of State, Bureau of Consular Affairs*, the D.C. Circuit considered § 1202(a) and concluded that visa applicants have "no substantive right" to have their applications processed in "any particular venue." 104 F.3d 1349, 1354 (D.C. Cir. 1997). Such decisions were "entrusted to the discretion of the State Department" and were thus unreviewable by the Court. *See id.* at 1353–54. . . . In looking at § 1202(a), the court reasoned that the statute "grants to the Secretary discretion to prescribe the place at which aliens apply for immigrant visas without providing substantive standards against which the Secretary's determination could be measured." *Id.* at 1353. The form, manner, and place "are left entirely to the discretion of the Secretary of State." *Id.*

*Tikhonova v. U.S. Dep't of State*, No. 22-CV-06034-HSG, 2023 WL 5110925, at *3 (N.D. Cal. Aug. 9, 2023). In *Tikhonova*, a U.S. citizen petitioner sought redress to change the location of her

7

beneficiary mother's visa interview. Observing that relevant regulations placed no limitations on where the State Department could schedule the visa interview, Judge Gilliam found that "[t]he location of a visa interview falls squarely within this kind of complex and nuanced policy determination" that was not subject to judicial review. *Id.* at \*4. The court therefore granted the government's motion to dismiss.

At least two district courts have rejected challenges to the very DS-5535 collection scheme challenged here, and this Court has located no cases allowing this challenge to proceed past the pleading stage. In a case nearly identical to this one, another district court granted a motion to dismiss a claim brought by fourteen Iranian American families challenging the timing of the DS-5535 collection. *See Taherian v. Blinken*, No. SACV 23-01927-CJC (ADSx), 2024 WL 1652625 (C.D. Cal. Jan. 16, 2024). In *Taherian*, the district court found that 8 U.S.C. § 1202(a) "contains no standard by which the Court could judge the government's choices regarding when and how to collect the DS-5535 information." *Id.* at \*5. The *Taherian* court rejected the government's argument that the claims were moot, having "already agreed with Plaintiffs that the government has not made truly final decisions on Plaintiffs' visa applications." *Id.* The court went on: "And given that determination, the Court must agree with Defendants that the government has discretion regarding how to run the visa application process, including the 'form and manner' in which Plaintiffs must make their applications. There are no allegations that Defendants do not collect all the necessary information to properly evaluate Plaintiffs' applications; the allegations challenge only the allegedly belated timing of Defendants' DS-5535 collection." *Id.* Accordingly, the court dismissed the claim challenging the timing of the DS-5535 collection. *Id.* at \*6.

More recently, another district court dismissed a similar DS-5535 challenge brought by petitioners seeking visas for their Somalian spouses. *See Dalmar v. Blinken*, No. 23-cv-3315 (DLF), 2024 WL 3967289, at \*7 (D.D.C. Aug. 26, 2024). The court explained that 8 U.S.C. § 1202(a) "grants the agency broad discretion for determining the 'form and manner' of visa applications" and therefore the agency's procedure for requesting the DS-5535 after the consular interview was nonreviewable. *Id.* (citing *Legal Assistance*, 104 F.3d at 1353).

1    Plaintiffs do not address *Taherian* head-on in their brief.[4]  However, the complaint tacitly
2    acknowledges the discretionary nature of what they are challenging.  For instance, the complaint
3    acknowledges that not all Iranian visa applicants are asked to complete the DS-5535.  *See* Compl.
4    ¶ 163 (alleging the DS-5535 "now is required on most Iranian visa applicants").  The complaint also
5    acknowledges it is within the contemplated scope of the process for the agency to solicit answers to
6    additional questions "at the time of the interview" or when "responses given in a visa interview
7    indicate a need for greater scrutiny."  *Id.* ¶ 128 (quoting 86 Fed. Reg. 8475, 8476 (Feb. 5, 2021)).
8    Still, plaintiffs urge that defendants' actions are "arbitrary and capricious because . . . Defendant[s]
9    *should* collect DS-5535 at NVC and conduct security background check prior to the interview[.]"
10   Dkt. No. 12 ("Opp'n") at 13 (emphasis added).

11   The Court agrees with the reasoning in *Taherian*, 2024 WL 1652625, at *4-6, and finds that
12   "no judicially manageable standards are available for judging how and when [the] agency should
13   exercise its discretion" regarding when to collect the DS-5535.  *See Heckler*, 470 U.S. at 830.  The
14   Court therefore GRANTS the motion to dismiss Count One.  Because no amendment could make
15   this claim judicially reviewable, dismissal is with prejudice.[5]

## II.    Organizational Standing

Defendants move to dismiss plaintiff Pars Equality Center from this case, arguing that Pars lacks organizational standing.  As the Ninth Circuit has explained, "The Article III standing inquiry serves a single purpose: to maintain the limited role of courts by ensuring they protect against only concrete, non-speculative injuries."  *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 583 (1992)).  Where an organizational plaintiff asserts standing, either on behalf of its members or in its own right, courts "conduct the same inquiry as in the case of an individual[.]"  *Id.*  That is, organizational plaintiffs

---

[4] The *Dalmar* order issued after the briefing on this motion was complete.  The same plaintiffs' counsel here also represented the plaintiffs in *Taherian* and *Dalmar*.

[5] The Court does not reach defendants' alternative grounds for dismissal, that collecting the DS-5535 after the consular interview is not incongruent with the INA and does not violate the APA.  *See* Mot. at 11, 14-18.

9

"have the burden of demonstrating that (1) they have suffered an injury-in-fact, meaning an injury that is 'concrete and particularized' and 'actual and imminent,' (2) the alleged injury is 'fairly traceable' to the defendants' conduct, and (3) it is 'more than speculative' that the injury is judicially redressable." *Id.* (quoting *Lujan*, 504 U.S. at 560-61).

As a threshold matter, the Court agrees with defendants that "the Complaint cannot be construed to extend PARS' claim outside Count One." Mot. at 9 n.5. That count broadly challenges defendants' actions in "preventing Iranian visa applicants from furnishing DS-5535 responses prior to their interviews[.]" *See* Compl. ¶ 165. The remaining counts challenge the processing of the individual plaintiffs' visa applications. Plaintiffs do not dispute that Pars has a potential claim only as to Count One. Plaintiffs also appear to concede that the judicial redressability element hinges on this Court finding the DS-5535 scheme unlawful. *See* Opp'n at 11 ("Plaintiff Pars' injury-in-fact is judicially redressable should this court found [sic] DS-5535 Scheme unlawful and unreasonable delay [sic].").

As explained above, the Court finds the conduct complained of in Count One is not judicially redressable. Pars therefore cannot prove one of the necessary elements for Article III standing and must be dismissed from the case. The Court GRANTS the motion to dismiss Pars Equality Center as a plaintiff in this action, with prejudice.

### III. Dismissal or Severance of Certain Plaintiffs

The Court next addresses defendants' argument that some plaintiffs should be dismissed based on forum shopping or res judicata and/or that some plaintiffs' claims should be severed due to misjoinder and improper venue.

At this time, the individual petitioner plaintiffs remaining in the case are: (1) Fahimeh Jafarali Jasbi, who lives in Livermore, California, and who has not previously filed a lawsuit of this type; (2) Ali H. Karimkhan, who lives in Melbourne, Florida, and who previously filed a case in the Middle District of Florida that the district court dismissed in November 2023; and (3) Mona Sadat Sadati, who lives in Mission Viejo, California, and who previously filed a case in the Central District

of California that she voluntarily dismissed in November 2023.  *See* Dkt. Nos. 24, 32.[6]

### A.     Legal Standards

The applicable venue statute states:

> In civil actions where the defendant is an officer or employee of the United States, venue is proper in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Federal Rule of Civil Procedure 20 provides, in part:

> Rule 20. Permissive Joinder of Parties
>
> (a) Persons Who May Join or Be Joined.
>
>> (1) *Plaintiffs*. Persons may join in one action as plaintiffs if:
>>
>>> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>>>
>>> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a).

Rule 21 provides:

> Rule 21. Misjoinder and Nonjoinder of Parties
>
> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

---

[6] The Court sua sponte takes judicial notice of the facts, not subject to reasonable dispute, that Livermore is located in Alameda County, within the Northern District of California; that Melbourne is located in Brevard County, within the Middle District of Florida; and that Mission Viejo is located in Orange County, within the Central District of California.  *See* Fed. R. Evid. 201.

11

Fed. R. Civ. P. 21. "Severance under Rule 21 . . . occasionally is appropriate in actions in which venue is improper as to some but not all defendants." 7 Fed. Prac. & Proc. Civ. § 1689 (3d ed.). In such instances, the court either may dismiss or transfer that portion of the action pursuant to 28 U.S.C. § 1406. *Id.* "Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum." *Id.*

**B.     Analysis**

Here, the allegations of misjoinder and forum shopping overlap with the Court's substantive analysis. Count One, alleging a "DS-5535 Scheme" has now been dismissed. *See* § I, *supra*. What remain in this case are the counts alleging unreasonable delay and seeking corrective action in the adjudication of the individual beneficiary plaintiffs' visa applications. The remaining plaintiff group is comprised of three petitioner plaintiffs (and their beneficiary family members), only one of whom resides within the Northern District of California: petitioner plaintiff Fahimeh Jafarali Jasbi, who lives in Livermore. *See* Compl. ¶ 27.

Assuming for the moment that all plaintiffs were properly joined at the outset of this case, venue would be proper in this District because one of the plaintiffs resides here. Venue would also be proper in the U.S. District Court for the District of Columbia, where defendants reside, or in the judicial districts where the other petitioner plaintiffs reside. *See Kashin v. Kent*, 457 F.3d 1033, 1037 (9th Cir. 2006) ("[T]he Department of State[] is located within the District of Columbia. The Department of State's foreign actions are 'inextricably bound up with the District of Columbia in its role as the nation's capital.'") (citation omitted). Where venue is proper in multiple judicial districts, courts evaluate a number of factors—including the plaintiff's choice of forum—to determine which venue is more convenient to the parties and the witnesses. *See Williams v. Bowman,* 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). However, the Ninth Circuit has held that courts should disregard a plaintiff's forum choice where the suit is a result of forum-shopping. *See Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir. 1991).

Defendants allege that a subset of the plaintiff group has engaged in forum shopping, and the Court agrees there is concerning indicia of forum shopping here. Four of the original thirteen

1  families in this case previously filed suit in other districts, challenging the delays in administrative
2  processing of their visa applications, but voluntarily dismissed their cases while a motion to dismiss
3  was pending and before filing an opposition brief.[7] *See* C*ummings v. U.S. Secretary of State*, No.
4  9:23-cv-81326-AMC (S.D. Fla.) (filed Sept. 27, 2023, voluntarily dismissed Jan. 1, 2024); *Sadati*
5  *v. Blinken*, No. 8:23-cv-01125-JWH-ADS (C.D. Cal.) (filed June 23, 2023, voluntarily dismissed
6  Nov. 11, 2023); *Khadem v. Blinken*, No. 2:23-cv-03212-ES-CLW (D.N.J.) (filed June 12, 2023,
7  voluntarily dismissed Nov. 20, 2023). The Rabbani family did this twice, first filing suit in the
8  District Court for the District of Columbia and then, nine days after voluntarily dismissing that case
9  while a motion to dismiss was pending, filing a new suit in the Northern District of Georgia. *See*
10 *Rabbani v. Blinken*, No. 1:23-cv-03548-ELR (N.D. Ga.) (filed Aug. 9, 2023, voluntarily dismissed
11 Dec. 12, 2023); *Rabbani v. Blinken*, No. 1:23-cv-01408-RC (D.D.C.) (filed May 17, 2023,
12 voluntarily dismissed July 31, 2023). A fifth plaintiff family filed suit in the Middle District of
13 Florida, where the petitioner plaintiff resides, but had their case dismissed on mootness grounds
14 after they failed to respond to a motion to dismiss. *See Karimkhan v. U.S. Sec'y of State*, No. 6:23-
15 cv-01025- GAP-LHP, Dkt. No. 19 (M.D. Fla. Nov. 7, 2023); *see also* Dkt. No. 10-4. In all but one
16 of the above cited cases, plaintiffs were represented by the same counsel who represents plaintiffs
17 here.[8]

18 Plaintiffs respond that the present lawsuit differs because the prior lawsuits did not challenge
19 the "DS-5535 Scheme." This does not allay the Court's forum shopping concerns. The similarity
20 of the facts underlying all these cases, the pattern of voluntarily dismissing after defendants moved
21 to dismiss, that plaintiffs were represented by the same attorney who represents them here, and the
22 fact that the majority of the plaintiffs in this case appear to have no connection to the Northern
23 District of California, all combine to suggest that many of the plaintiffs have joined together in this
24 case and re-filed their suits here in order to obtain what they perceive to be a more favorable forum.

---

[7] The Court takes judicial notice of the dockets in these cases, which are a matter of public record and not subject to reasonable dispute. *See* Fed. R. Evid. 201.

[8] In *Khadem v. Blinken*, No. 2:23-cv-03212-ES-CLW (D.N.J.), plaintiffs were represented by different counsel, but defendants' reply brief states that the attorney in *Khadem* is co-counsel with plaintiff's counsel here in another immigration matter. Reply at 15 n.20.

1    Federal Rule of Civil Procedure 21 permits the Court, "[o]n motion or on its own, . . . at any
2    time, on just terms, [to] add or drop a party. The court may also sever any claim against a party."
3    Fed. R. Civ. P. 21. Given that the sole count (Count One) that tied these claims together has now
4    been dismissed from the case, and given the fact-intensive nature of the visa adjudication claims
5    that remain, the Court finds it just at this still-early stage of the case to sever the claims of the
6    individual plaintiff families and to retain only the claims of the family with ties to this district.[9] The
7    Court will, pursuant to 28 U.S.C. § 1406(a), SEVER the claims of the plaintiff families who do not
8    reside in this district with the intent of transferring them to the appropriate venue. This applies to
9    the Sadati and Karimkhan families.

10   **Accordingly, the rest of this Order binds only the plaintiffs now remaining in the case:**
11   petitioner plaintiff Fahimeh Jafarali Jasbi and beneficiary plaintiff Abbas Jafar Ali Jassebi.

### IV. Mootness

Counts Two through Five allege that defendants have unlawfully withheld or unreasonably delayed beneficiary plaintiffs' visa adjudications. Defendants argue these counts must be dismissed as moot because a consular officer "refused" each beneficiary plaintiff's visa application under 8 U.S.C. § 1201(g), also known as a Section 221(g) refusal. In other words, defendants argue that the beneficiary plaintiffs have received final adjudications of their visa applications and that no further action is required from defendants, rendering Counts Two through Five moot.

Drawing all reasonable inferences in plaintiffs' favor, as the Court must at this stage, the Court rejects defendants' argument. The parties agree that the governing regulations state, "When a visa application has been properly completed and executed before a consular officer . . ., the

---

[9] However, the Court rejects defendants' motion to dismiss plaintiffs Karimkhan and Ansari based on res judicata. *See* Mot. at 21-22. In November 2023, the Middle District of Florida dismissed their lawsuit on mootness grounds. *See* Dkt. No. 10-4 at 5. A prior dismissal on mootness grounds does not have preclusive effect under res judicata. *See Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) ("a dismissal for mootness is a dismissal for lack of jurisdiction, and a court that has no jurisdiction cannot enter a judgment with preclusive effect") (quoting *In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001)); *see also N. Sims Organ & Co. v. Sec. & Exch. Comm'n*, 293 F.2d 78, 82 (2d Cir. 1961) ("It is well settled that the dismissal of a case because it is moot does not lay a basis for the application of the doctrine of res judicata.") (citations omitted).

consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or . . . discontinue granting the visa." *See* 22 C.F.R. § 42.81(a). The regulations leave no option for an officer to temporarily refuse or suspend the application pending further information. The parties also agree that the visa applications of the beneficiary plaintiffs here have been refused pursuant to Section 221(g).

However, plaintiffs further allege that the Section 221(g) "refusals" of their applications in this case operated not as a final adjudication but rather as a temporary determination pending "administrative processing." The complaint alleges that, following their immigrant visa interviews, beneficiary plaintiffs' cases were placed in administrative processing. Compl. ¶ 8. Beneficiary plaintiffs were told that defendants "required vetting of their DS-5535 responses, which embassies, consulates, and consular officers refuse to accept prior [to] or even at the immigrant visa interviews." *Id.* ¶ 9; *see also id.* ¶ 45 (alleging plaintiff Abbas Jafar Ali Jassebi's application is now in post-interview administrative processing following a visa interview but still has not been finally adjudicated). Plaintiffs attach screenshots of their visa application statuses on the State Department Consular Electronic Application Center ("CEAC") website. These screenshots show each case status as "Refused" and further state, in part: "If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." Compl., Ex. J. This language cuts against defendants' contention that the "refused" status of plaintiffs' visa applications is in fact "final."

The Court acknowledges that some courts have gone the other way on this question, albeit at times under different factual circumstances. For instance, defendants cite to several district court decisions and an unpublished decision from the Sixth Circuit. *See Hussein v. Beecroft*, 782 F. App'x 437, 441-42 (6th Cir. 2019) (affirming the district court's ruling that the mandamus claim was rendered moot where "the unrebutted evidence showed that Abdulrab was denied a visa multiple times because the consular officer determined she failed to prove she was an 'immediate relative' of Hussein"); *Elhabash v. U.S. Dep't of State*, Civil No. 09-5847 (FSH), 2010 WL 1742116 (D.N.J. Apr. 27, 2010) (finding court was without jurisdiction where visa application refused and applicant

15

1  told that further administrative processing was required, in case where plaintiff filed suit three

2  months after visa interview).

3       Given the non-conclusory allegations in this case, this Court is persuaded by the reasoning

4  contained in the decisions of numerous other courts that have found a Section 221(g) refusal does

5  not operate as a final decision under facts as alleged here. As explained by the district court for the

6  District of Columbia:

> courts in this district have explained that the doctrine of consular non-reviewability precludes review only of "final visa determinations" and "does not apply to challenges regarding decisions that are not yet final." *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020); *Shen v. Pompeo*, No. 20-1263, 2021 WL 1246025, at *3 (D.D.C. Mar. 24, 2021) ("[T]he doctrine of consular non-reviewability does not apply where the government has not made a final visa decision."). Cases in administrative processing "have not been finally refused," *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 292 (D.D.C. 2016), and are therefore subject to judicial review for undue delay. *Ibrahim v. U.S. Dep't of State*, No. 19-610, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020); *Shen*, 2021 WL 1246025, at *4.

*Sawahreh v. United States Dep't of State,* 630 F. Supp. 3d 155, 159-60 (D.D.C. 2022); *see also Taherian*, 2024 WL 1652625, at *3 (finding, under nearly identical facts, "it does not seem that Plaintiffs' visa applications have been finally ruled upon such that their claims would be rendered moot"). This reasoning applies with even more force in a case such as this one, where beneficiary plaintiffs allege that they were instructed to complete a supplemental form, the DS-5535, *after* the interview. And although defendants label the application refusal as "final," their brief concedes that the beneficiary plaintiffs' applications were "then placed in administrative processing" and "[a]dditional security screening is ongoing[.]" *See* Mot. at 19. As another district court has explained, this "is not a 'refusal' within the normal meaning of that word." *See Li v. Blinken*, No. 23-cv-02142-DOC-KES, 2024 WL 2107341, at *3 (C.D. Cal. Apr. 4, 2024).

      The Court finds Counts Two through Five are not moot.

### V.   Unreasonable Delay (Counts Two Through Five)

      Defendants additionally move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts Two through Five, the APA and Mandamus Act challenges alleging unreasonable delay in

16

processing the beneficiary plaintiffs' visa applications. Defendants argue plaintiffs' claims are barred by the doctrine of consular nonreviewability, do not show that any delay is per se unreasonable, and do not establish that defendants have a non-discretionary duty that they have failed to take. The Court rejects defendants' arguments and will allow Counts Two through Five to proceed past the pleading stage.

Defendants' argument regarding consular nonreviewability essentially mirrors the mootness issue: defendants argue that the consular officer "refused" the visa applications, and because the law states that a consular officer's decision whether to issue or withhold a visa is not subject to judicial review, then consular nonreviewability bars the claims here. The Court rejects this argument for the same reasons as stated above. *See* § IV, *supra*. Plaintiffs have adequately pleaded that they have not truly received a final adjudication of their visa applications, as they were required to complete the DS-5535 and are now in an administrative processing limbo. They are challenging the delay, not the substance of the consular officer's decision.

The Court also rejects defendants' argument that the complaint fails to plead an unreasonable delay claim. The remaining beneficiary plaintiff (Jassebi) had a consular interview on March 27, 2023.[10] Plaintiffs filed this suit roughly nine months later. *See* Dkt. No. 1. In analyzing claims of unreasonable delay under the APA, "courts generally apply the so-called *TRAC* factors . . . ." *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Telecomm. Research & Action v. F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984)). Defendants did not brief the *TRAC* factors in their motion and, in any event, the Court agrees with the line of cases finding that the unreasonable delay inquiry is typically too fact-specific to be decided on a motion to dismiss. *See, e.g., Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020) ("Undergoing such a fact-specific inquiry at this stage would be premature."); *Gelfer v. Chertoff*, No. C 06-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 934 (D.N.M. 1999)). For the time being, the Court finds that a nine-

---

[10] *See* n.2, *supra*.

month delay is adequate for the unreasonable delay claims to proceed past the pleading stage. *See Li*, 2024 WL 2107341, at *3 (unreasonable delay adequately alleged where government took six months longer than represented to process application). *But see, e.g., Liew v. Sanders*, No. 24-cv-00342 (TNM), 2024 WL 3026538, at *4 (D.D.C. June 17, 2024) (dismissing claim because ten-month delay is patently reasonable).

Finally, the Court finds the complaint adequately alleges the violation of a mandatory, non-discretionary duty to adjudicate the visa applications within a reasonable time. Defendants argue that there is no further action to compel because, whether or not they reconsider plaintiffs' visa applications at a later date, they took final action via the Section 221(g) refusals, and relief is only available where a plaintiff establishes that "an agency failed to take a discrete agency action that it is required to take." Mot. at 20 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Again, this is another gloss on the same argument about whether the agency has already taken final action. This Court joins with those district courts that have found the pace of processing a visa application is not entirely discretionary, where "the administrative processing of Plaintiff's visa application appears to be a routine procedure requiring additional document submission and review." *See Li*, 2024 WL 2107341, at *2; *see also Durham v. Blinken*, No. CV 24-02868 PSG (MRWx), 2024 WL 3811146, at *4 (C.D. Cal. Aug. 8, 2024); *Igal v. U.S. Consulate General in Johannesburg*, No. 23-cv-4160, 2024 WL 2882653, at *4-6 (S.D. Ohio June 7, 2024).

The Court DENIES defendants' motion to dismiss Counts Two through Five. These claims may proceed on behalf of the two remaining individual plaintiffs, Fahimeh Jafarali Jasbi and Abbas Jafar Ali Jassebi.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART the motion to dismiss.

The Court GRANTS the motion to dismiss Count One, with prejudice. Accordingly, Pars Equality Center is dismissed as a plaintiff from this case.

The Court SEVERS the claims of plaintiffs Ali H. Karimkhan, Haniyeh Ansari, Mona Sadat

18

Sadati, and Seyed Ghasem Sadati from this case.  **No later than November 15, 2024, the Sadati and Karimkhan families shall each file a notice** indicating whether they prefer this Court: (1) dismiss their claims without prejudice, (2) transfer their case to the district court for the District of Columbia, or (3) transfer their case to the district in which the petitioner plaintiff resides.  The notice shall be accompanied by a proposed order.

The Court DENIES the motion to dismiss Counts Two through Five.  Counts Two through Five shall proceed as to plaintiffs Fahimeh Jafarali Jasbi and Abbas Jafar Ali Jassebi.

Pursuant to the parties' stipulation, the Court ORDERS the remaining parties to file a joint proposed summary judgment briefing schedule within seven days of this Order.  *See* Dkt. Nos. 16, 17.

**IT IS SO ORDERED**.

Dated: November 5, 2024

SUSAN ILLSTON
United States District Judge